FILED
United States Court of Appeals
Tenth Circuit

January 26, 2018

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MALIK M. HASAN, M.D.,

    Plaintiff - Appellant,

v.

CHASE BANK USA, N.A.,

    Defendant - Appellee.

No. 16-1418

_____

MALIK M. HASAN, M.D.,

    Plaintiff - Appellant,

v.

AMERICAN EXPRESS CENTURION BANK,

    Defendant - Appellee.

No. 17-1072

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:16-CV-01991-RPM) and (D.C. No. 1:16-CV-02549-RBJ)**
_____

Glenn W. Merrick, G.W. Merrick & Associates, LLC, Centennial, Colorado, for Plaintiff-Appellant.

Alan E. Schoenfeld, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York (Arpit K. Garg, Wilmer Cutler Pickering Hale and Dorr, Washington D.C., with him on the brief), for Defendant-Appellee Chase Bank USA, N.A.

Steven M. McCartan, Shook, Hardy & Bacon LLP, Kansas City, Missouri, (Eric J. Hobbs, Shook, Hardy & Bacon LLP, Denver, Colorado, with him on the brief), for Defendant-Appellee American Express Centurion Bank.

_____

Before **MORITZ**, **KELLY**, and **MURPHY**, Circuit Judges.

_____

**MORITZ**, Circuit Judge.

_____

Malik Hasan ordered wine from Premier Cru Fine Wines (Premier Cru) and paid with credit cards issued by Chase Bank USA, N.A. (Chase) and American Express Centurion Bank (AmEx). Premier Cru declared bankruptcy while Hasan was still waiting for delivery of wine that he paid nearly $1 million for. Hasan asserts that under a provision of the Fair Credit Billing Act (FCBA), 15 U.S.C. §§ 1666–66j, Chase and AmEx must refund his accounts the amount he paid for wine that Premier Cru failed to deliver. But because we reject Hasan's interpretation of that FCBA provision—§ 1666i—we affirm the district court's orders dismissing his complaints against Chase and AmEx.

**I**

Hasan used his Chase and AmEx credit cards to purchase wine from Premier Cru for future delivery: Hasan paid up front, and Premier Cru agreed to deliver the wine sometime in the future. Premier Cru fulfilled some, but not all, of Hasan's orders. And in January 2016, Premier Cru declared bankruptcy. At that time, Hasan had paid $689,176.92 with his Chase card and $379,153.72 with his AmEx card for

wine he never received.

Hasan asked both companies to refund his accounts for the undelivered wine under § 1666i of the FCBA. Chase complied in part and credited Hasan's account $100,136.88.[1] AmEx refused to credit Hasan's account. So Hasan filed a lawsuit against each company, seeking $589,040.04 from Chase and $379,153.72 from AmEx.

Chase and AmEx each filed a motion to dismiss, arguing primarily that because Hasan had fully paid the balance on his credit cards, he had no claim under § 1666i. The district court in Chase's case ruled first, agreed with Chase's interpretation of § 1666i, and dismissed the case. The district court in AmEx's case adopted the statutory-interpretation reasoning of the earlier decision and dismissed Hasan's case. Hasan appeals.[2]

**II**

We review de novo a district court's dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). Likewise, we independently interpret

---

[1] This was the amount of disputed charges that had occurred within 540 days of Hasan's demand letter. On appeal, Chase explains that this 540-day rule comes from "interchange rules applicable to Hasan's credit-card accounts." Chase Br. 9 n.2. In other words, "the bank could charge back through the payment networks" any charges that a customer disputes within 540 days. *Id.* at 8. At oral argument, Chase clarified that its decision to refund Hasan's account was a voluntary accommodation that wasn't based on any statutory requirement in the FCBA.

[2] We decide both of Hasan's appeals in this opinion. As Hasan's counsel acknowledged at oral argument, both cases involve the same relevant facts and arguments.

statutes. *United States v. Black*, 773 F.3d 1113, 1115 (10th Cir. 2014).

Statutory interpretation begins with the words in the statute. *Levorsen v. Octapharma Plasma, Inc.*, 828 F.3d 1227, 1231 (10th Cir. 2016). The statute at issue in this case, § 1666i, has two sections. The first makes credit-card issuers "subject to all claims (other than tort claims) and defenses arising out of any transaction in which the credit card is used as a method of payment or extension of credit." § 1666i(a). This broadly worded first section, though, is "[s]ubject to the limitation contained in subsection (b)." *Id.* And subsection (b) limits the amount of a cardholder's claims or defenses to "the amount of credit outstanding with respect to [the disputed] transaction at the time the cardholder first notifies the card issuer . . . of such claim or defense." § 1666i(b). This case turns on this limitation—specifically, on the meaning of "credit outstanding."

The FCBA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." § 1602(f). In other words, when a creditor extends "credit" to someone, the person receiving the "credit" now has a debt to the creditor. *Id.* The credit granted and the debt owed are two sides of the same transaction. The FCBA doesn't define "outstanding," but it's an adjective meaning "[u]npaid" or "uncollected." *Outstanding*, Black's Law Dictionary (10th ed. 2014). So "the amount of credit outstanding" is the amount of credit extended by the card issuer that the cardholder hasn't yet paid back. Stated differently, a cardholder's claim under § 1666i is limited to whatever amount of the debt remains unpaid.

4

Here, Chase and AmEx extended "credit" to Hasan when he used his credit cards to buy wine. Chase and AmEx paid Premier Cru for the wine and granted Hasan the right to defer paying them that amount. *See* § 1602(f). So the amount of credit "outstanding" was whatever Hasan hadn't yet paid to Chase and AmEx for the wine. But Hasan specifically alleged in his complaint that he paid both Chase and AmEx in full for his wine purchases. So there was no "credit outstanding" relating to the wine purchases. And because recovery under § 1666i is limited to the "amount of credit outstanding," Hasan could recover nothing under that statute.

Attempting to avoid this result, Hasan offers a different interpretation, urging that "*in the context of purchases for future delivery* 'the amount of credit outstanding with respect to such transaction' means the aggregate payments by the cardholder to the card issuer on account of the subject purchase transaction(s) until the purchased goods/services are delivered by the merchant." Aplt. Br. 10 (quoting § 1666i(b)). He points to the remainder of § 1666i(b), which describes how to determine the amount of credit outstanding by applying "payments and credits" first to late charges, then to finance charges, and then to purchases made with the card. According to Hasan, because the second sentence of § 1666i(b) combines the terms "payments and credits" and discusses applying them to an account, "credit" in this statute actually means "payment." And although Hasan doesn't make it explicit, what's "outstanding" in this argument is the delivery of the wine. So under Hasan's reasoning, the "credit outstanding" refers to the *payments* he made to Chase and

5

AmEx for wine, which are *outstanding* because the wine hasn't been delivered.[3] Of course, this doesn't work because the payments themselves *aren't* outstanding; Hasan made his payments. It's the delivery of wine that hasn't occurred.

Further, Hasan's argument ignores and contradicts both (1) the statutory definition of "credit" that we discuss above, and (2) the FCBA's definition of "creditor." First, a "credit" in the FCBA is the right to defer payment; it isn't a payment itself. § 1602(f). Hasan recognizes that the FCBA defines "credit" and offers an unconvincing argument about why that definition doesn't apply here. He suggests that if "credit" is equivalent to accumulated cardholder debt—which it is, according to the § 1602(f) definition—then the discussion in § 1666i(b) about applying "payments and credits" to an account doesn't make sense. But § 1666i(b) discusses applying "payments and *credits to the cardholder's account*." § 1666i(b) (emphasis added). This plural use of the word "credit," in the context of the words that follow it, appears to have a different meaning than the use of the singular "credit" earlier in the same provision. *See Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) (stating that neighboring words can give more precise content to the

---

[3] Hasan further supports his textual argument with references to how Chase and AmEx refer to payments and credits in their monthly billing statements. He claims that both companies use the word "credit" to mean "payment." But the manner in which Chase and AmEx use the word "credit" in their billing statements isn't relevant to determining the meaning of the phrase "credit outstanding" in § 1666i(b). Hasan also provides a letter from an accounting firm opining that Hasan has correctly interpreted the statute. This letter is similarly irrelevant; we interpret statutes de novo, and while other interpretations may be interesting or even useful, they aren't determinative.

phrase at issue).

Second, a "creditor" under the FCBA is one who "regularly extends . . . consumer credit" or "honors [a] credit card and offers a discount which is a finance charge." § 1602(g). So Chase and AmEx are "creditors" who extended "credit" to Hasan by granting him the right to defer payment on his wine purchases. *See* § 1602(f), (g). Confusingly, under Hasan's interpretation, *he* extended "credit" (apparently to Premier Cru) when he made payments for future wine deliveries, and that credit remains "outstanding" until the wine is delivered. But there is no "credit" between Hasan and Premier Cru because no payment has been deferred, and the deferral of payment is part of the definition of credit. *See* § 1602(f). Further, Hasan is not a "creditor" under the FCBA's definition—he doesn't regularly extend consumer credit or honor credit cards. *See* § 1602(g). So Hasan's proposed interpretation of "credit outstanding" doesn't work in light of the clear statutory definitions of "credit" and "creditor."

Hasan nevertheless insists that his reading is more consistent with the purpose of the FCBA. The FCBA is a remedial statute and should be construed broadly to protect consumers, but that doesn't give this court license to read into the statute something that isn't there. *See Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002). Hasan asks us to draw a distinction between transactions in which the merchant delivers goods immediately and those in which the merchant delivers goods in the future. But § 1666i doesn't contain different rights for different types of

7

transactions. *Cf. Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008) ("We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable."). Hasan also points out that a person who didn't pay off his or her credit card would have more recourse than he does in this particular situation and argues that he shouldn't be penalized for responsibly paying his credit-card bills in full each month. That may be true, but as Chase points out, Hasan would have been in the same position had Congress not passed this statute. "In the pre-credit-card world, if Hasan had fully paid a merchant but the merchant later failed to deliver the promised goods, he would have had only one remedy: to affirmatively sue the merchant." Chase Br. 24. Hasan's remedy lies in Premier Cru's bankruptcy proceedings, not with Chase and AmEx.

The plain language of the FCBA forecloses Hasan's claims against Chase and AmEx. Section 1666i(a) provides that cardholders can assert non-tort claims and defenses against the card issuer. But any such claim is expressly limited to "the amount of credit outstanding with respect to [the disputed] transaction." § 1666i(b). Hasan fully paid off both of his credit cards. So "the amount of credit outstanding with respect to" the undelivered wine is $0, and Hasan has no claim against Chase or AmEx under this provision of the FCBA. § 1666i(b). Because we decide Hasan's claims on this ground, we need not address his argument that § 1666i(a) creates an

affirmative right of action for cardholders against card issuers.[4] Regardless of whether such a right exists, Hasan has no claim because there is no "credit outstanding" related to the wine transactions. Additionally, because Hasan's claims fail under § 1666i(b), we need not consider whether he has satisfied the geographical requirement of § 1666i(a)(3).

*   *   *

We affirm the orders dismissing Hasan's complaints.

---

[4] Some district courts have held that it does not. *See, e.g.*, *Beaumont v. Citibank*, No. 01 Civ. 3393(DLC), 2002 WL 483431, at *5–7 (S.D.N.Y. Mar. 28, 2002) (finding that FCBA is structured to facilitate withholding of payment by cardholder; if card issuer sues for payment, cardholder can use § 1666i in a defensive posture).

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

January 26, 2018

Chris Wolpert
Chief Deputy Clerk

Mr. Glenn W. Merrick
G.W. Merrick & Associates, LLC
6300 South Syracuse Way, Suite 220
Centennial, CO 80111-0000

**RE:** 16-1418, 17-1072, Hasan v. Chase Bank USA
Dist/Ag docket: 1:16-CV-01991-RPM

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc: Arpit Kumar Garg
Eric James Hobbs
Steven McCartan
Alan E. Schoenfeld

EAS/lg